UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAY SMITH, AMERICANS FOR
REFORM, BARRET KISH, FERZELL
ARCHIE, RUSH HOLMES,

           Plaintiffs

v.

PATRICK M. MCPHARLIN,
DIRECTOR OF INSURANCE AND
FINANCIAL SERVICES; INTEGON
NATIONAL INSURANCE COMPANY;
THE HANOVER INSURANCE
COMPANY; ALLSTATE VEHICLE AND
PROPERTY INSURANCE COMPANY;
PROGRESSIVE CASUALTY
INSURANCE COMPANY; AMERICAN
AUTOMOBILE INSURANCE COMPANY,
THE AMERICAN INSURANCE
COMPANY; AMERICAN ALTERNATIVE
INSURANCE CORPORATION;
NATIONAL GENERAL INSURANCE
COMPANY; TRANSAMERICA
CASUALTY INSURANCE COMPANY;
FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN; STATE
FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY; AUTO-
OWNERS INSURANCE COMPANY;
USAA CASUALTY INSURANCE
COMPANY, LIBERTY MUTUAL
INSURANCE COMPANY,

           Defendants.

_____/

Case No. 2:17-CV-13392
District Judge Mark A. Goldsmith
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO GRANT: (1) PATRICK McPHARLIN'S MOTION TO DISMISS (DE 43), (2) THE INSURANCE DEFENDANTS' JOINT MOTION TO DISMISS (DE 45), AND (3) DEFENDANT PROGRESSIVE CASUALTY INSURANCE COMPANY'S MOTION TO DISMISS (DE 46)**

**I.     RECOMMENDATION**:  The Court should grant Patrick McPharlin's, the Joint Insurance Defendants', and Progressive Casualty Insurance Company's motions to dismiss (DEs 43, 45, 46) and dismiss this action with prejudice as to Plaintiffs Ray Smith and Barret Kish and without prejudice as to putative Plaintiffs Ferzell Archie, Rush Holmes and Americans for Reform.

**II.     REPORT**

**A.  Plaintiffs' Complaint**

On October 17, 2017, Plaintiffs Ray Smith, Barret Kish, Americans for Reform, Ferzell Archie, and Rush Holmes purportedly filed the instant lawsuit. (DE 1.)  However, the complaint was only signed by Ray Smith and Barret Kish, both proceeding *in pro per*, and Smith and Kish are the only plaintiffs who have appeared in this matter.  (*Id.*)[1]  Plaintiffs' complaint alleges generally that

---

[1] Plaintiffs' Complaint (DE 1 at Pg ID 1-7, 28-30) attaches a document Plaintiffs title their "Civil Action Brief."  (DE 1 at Pg ID 8-27.)  The Court entered an Order on March 20, 2018 striking the "Civil Action Brief" addendum for the reasons stated on the record during the March 15, 2018 hearing, including that the "brief" does not conform to the requirements of a pleading and/or motion as required by Fed. R. Civ. P. 7 and 8, and E.D. Mich. LR 7.1.  (DE 83 at 7.)  As the Court further discussed in its March 20, 2018 Order (DE 83), neither Archie nor Holmes signed the complaint, or any other document filed in this case, and neither appeared at the

automobile insurance rates under Michigan's No-Fault Act are unfair and discriminatory. Specifically, Plaintiffs allege that the use of "non driving factors to determine no fault auto insurance rates and premiums" violates their right to due process, equal protection under the Fourteenth Amendment to the United States Constitution, and federal antitrust law. (DE 1 at 5.) Plaintiffs seek "injunctive relief, declaratory relief, and punitive damages in the amount of $810,000,000.00 dollars in back payments to policy holders[.]" (*Id.* at 6.) In sum, these four individual plaintiffs (only two of whom have ever signed a pleading or appeared in Court) and a loose, non-corporate entity – none of whom or which are lawyers – purport to represent a class of auto policy holders.

## B. The Instant Motions to Dismiss

### 1. Defendants' Motions to Dismiss

#### a. Defendant McPharlin's motion (DE 43)

Defendant Patrick McPharlin, the Director of the Department of Insurance and Financial Services (DIFS), filed his motion to dismiss on December 15, 2017. (DE 43.) Director McPharlin asserts that Plaintiffs' claims against him, whether in his official or personal capacities, are barred by Eleventh Amendment or qualified

---

March 15, 2018 status conference and motion hearing, although Plaintiff Ray Smith stated he informed both individuals of the hearing and the Court had ordered them to appear, albeit with service problems discussed *infra*. Plaintiffs Ray Smith and Barret Kish are not licensed attorneys and are appearing *in pro per*, and thus, as discussed more fully *infra*, neither plaintiff can represent Archie, Holmes, or "Americans for Reform."

immunity.  He further argues that Plaintiffs do not have standing to pursue their claims, and that they cannot bring a claim on behalf of Americans for Reform.  He also asserts that Plaintiffs have failed to show that he violated the Equal Protection Clause or the Due Process Clause, and that their Commerce Clause claim based on the business of insurance is barred by the McCarran-Ferguson Act.  Finally, Director McPharlin argues that Plaintiffs' antitrust claim is barred pursuant to *Parker v. Brown*, 317 U.S. 341 (1943).

### b.    The Insurance Defendants' joint motion (DE 45)

The Insurance Defendants[2] filed their joint motion to dismiss on December 15, 2017.  (DE 45.)  The Insurance Defendants argue that Plaintiffs lack standing to bring any claims asserted in the complaint.  They further assert that Plaintiffs' claims fail because none of the Insurance Defendants is a state actor as required for Plaintiffs' constitutional claims.  Finally, the Insurance Defendants contend that Plaintiffs' purported antitrust claim is barred by the McCarran-Ferguson Act, the filed-rate doctrine, Plaintiffs' failure to exhaust their administrative remedies, and for failure to state a claim.

---

[2] Defendants state that the "Insurance Defendants" include:  The American Insurance Company, American Automobile Insurance Company, The Hanover Insurance Company, Progressive Casualty Insurance Company, American Alternative Insurance Corporation, Farm Bureau Mutual Insurance Company of Michigan, State Farm Mutual Automobile Insurance Company, Auto-Owners Insurance Company, Liberty Mutual Insurance Company, and USAA Casualty Insurance Company.  (DE 45 at 4.)

### c.    Defendant Progressive Casualty's motion (DE 46)

Defendant Progressive Casualty Insurance Company ("Progressive Casualty") also filed a separate motion to dismiss.  (DE 46.)  Progressive Casualty argues that Plaintiffs' complaint fails to state a claim upon which relief can be granted because Progressive Casualty does not write personal automobile insurance in the State of Michigan, and that it therefore could not have engaged in any of the challenged practices or caused any of Plaintiffs' alleged injuries.

### 2.    Plaintiffs' Joint Response Brief (DE 69)

On February 8, 2018, Plaintiffs Smith and Kish filed a response brief opposing Defendants' motions to dismiss.  (DE 69.)  Plaintiffs argue that they "have standing to bring their constitutional claims in Federal District Court on grounds that they were denied due process and equal protection under the law when defendants failed to provide them with an affordable method to purchase no-fault auto insurance essential to operating a motor vehicle."  (*Id.* at 5.)  They assert that the Defendants all use the same rate-making scheme to set excessive, discriminatory no-fault insurance rates "for Detroit residents who are predominantly African American[s] living in poverty."  (*Id.* at 2.)  Plaintiffs argue that they "and other Detroit motorists are unable to register their motor vehicles required by law to drive to work, hospital visits and take care of daily needs due to the excessive discriminatory insurance rates."  (*Id.*)  They contend that Defendants'

5

failure to offer Plaintiffs an alternative method to purchase fair, equitable and affordable liability-only insurance policies violates the Due Process and Equal Protection Clauses.  They further claim that their due process rights are violated by the seizure of vehicles during traffic stops for not providing proof of no-fault insurance, although it is unclear how any of the named defendants are liable for making traffic stops or seizure of vehicles.

Plaintiffs argue that Director McPharlin is not entitled to qualified immunity because his actions gave "insurance companies the approval to execute discriminatory rate-setting practices absent free market participation" and he "knew before approving the 7-day insurance policy rate-setting scheme, [that it] was unconstitutional."  Relying on *Shavers v. Attorney General of Michigan*, 402 Mich. 554 (1978) ("*Shavers I*") and *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1984), Plaintiffs also contend that the Insurance Defendants can be deemed "state actors" for purposes of their constitutional claims because they are regulated by the Director to conduct the business of insurance and are working together with government officials to implement the no-fault insurance requirements..  Plaintiffs further argue that because insurers collect premiums, which include a provision for assessments the insurers pay to the Michigan Catastrophic Claims Association (MCCA), they are state actors. Finally, Plaintiffs assert that their antitrust claim is not barred by the McCarran-Ferguson Act because they are not making a claim for

6

Congress to regulate the business of insurance, but rather a claim that the

Director's action to license only one insurance company (L.A. Insurance) to issue a

7-day insurance policy is a "pure monopoly." Plaintiffs did not respond to

Progressive Casualty's motion to dismiss.

### 3. Defendants' Reply Briefs

#### a. Director McPharlin's reply (DE 70)

On February 21, 2018, Director McPharlin filed a reply brief in support of

his motion to dismiss. (DE 70.) Director McPharlin argues that Plaintiffs'

response suffers from several procedural defects, including that it was more than

three weeks late, it remains unclear who the Plaintiffs are, and that Plaintiffs raise

many new issues in their response (i.e., a §1983 claim) that were not asserted in

their complaint. Director McPharlin further argues that Plaintiffs have failed to

meet their burden to show that he is not entitled to qualified immunity, and that

their response misstates both antitrust and insurance law. He asserts that

"[u]ltimately, Plaintiffs complain of policy issues and their remedy lies with the

legislative rather than the judicial branch of our government."

#### b. Insurance Defendants' reply (DE 72)

On February 22, 2018, the Insurance Defendants filed their reply brief in

support of their motion to dismiss. (DE 72.) The Insurance Defendants argue that

Plaintiffs continue to fail to demonstrate standing to pursue their claims because

their pleadings do not state whether they are purchasers of no-fault insurance policies. They also contend that Plaintiffs' constitutional claims fail because they cannot establish that the Insurance Defendants are state actors. The Insurance Defendants rely upon *American Manufacturers Mutual Insurance Company v. Sullivan*, 526 U.S. 40 (1999), for the principle that "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action," and argue that Plaintiffs offer no support for their other contentions. Finally, the Insurance Defendants reiterate that Plaintiffs failed to properly plead a Sherman Act antitrust claim and that even if that claim had been properly pleaded, it would be barred by the McCarran-Ferguson Act, the filed-rate doctrine, and Plaintiffs' failure to exhaust administrative remedies.

### C.    March 15, 2018 Motion Hearing and Status Conference

On February 6, 2018, the Court entered a notice of motion hearing, scheduling Defendants' motions to dismiss and Plaintiffs' two then-pending motions to amend the complaint (see DEs 51, 63, after which a third was filed as DE 74) for hearing on March 15, 2018 at 10:00 am. (DE 67.) The Court also entered a notice to appear for a status conference for the same date and time. (DE 68.) In a March 2, 2018 Order denying Plaintiffs Smith and Kish's motions to adjourn the status conference and hearing, the Court stated: "**The parties are reminded that all named plaintiffs are required to appear in person at the**

8

**March 15th status conference, as none of them have counsel.**"  (DE 78 at 5 (emphasis in original).)  The Court also stayed the case pending the March 15, 2018 hearing and status conference.  (DE 78 at 3-5.)

On March 15, 2018, Plaintiffs Ray Smith and Barret Kish and counsel for Defendants, Lori McAllister, Aaron Levin, Mary Elizabeth Lippett, Adam Fadly, Amy Lynn Piccola, Kaveh Kashef, Matthew P. Kennison, Gregory L. Curtner, Michael K. Farrell, and John Yeager, appeared.  The Court held a status conference on the record with the parties regarding Plaintiffs' complaint, the identity and status of the Plaintiffs, and ruled from the bench on Plaintiffs' motions for leave to amend the complaint.  The Court also entertained oral argument on Defendants' motions to dismiss, which the Court then took under advisement.  The Court subsequently entered an Order: (1) directing Plaintiffs Smith and Kish to provide proper contact information for putative plaintiffs; (2) striking the "civil action brief" attached to Plaintiffs' complaint; (3) denying Plaintiffs' motions to amend the complaint without prejudice; (4) voluntarily dismissing Defendant Transamerica without prejudice; and (5) otherwise staying the case pending final decision on Defendants' motions to dismiss.  (DE 83.)

### D.    Standards

Defendants' motions are brought pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).

9

### 1. Rule 12(b)(1)

"When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). In reviewing a motion under Rule 12(b)(1), the "court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003). When faced with a challenge to subject matter jurisdiction, "a court must address that issue before all others." *Cain v. Redbox Automated Retail, LLC*, 981 F.Supp.2d 674, 681 (E.D. Mich. 2013) (collecting cases).

Motions under Rule 12(b)(1) fall into two categories: "facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges "the sufficiency of the pleading itself," and the "court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). A factual attack does not challenge the sufficiency of the allegations, but is a "challenge to the factual existence of subject matter jurisdiction," to which "no presumptive truthfulness applies to the factual

allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear a case." *Id.* (internal citation omitted).

### 2. Rule 12(b)(6)

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

### 3. *Pro Se* Pleadings

The Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[3]

## E. Discussion

### 1. The purported claims of Plaintiffs Rush Holmes, Ferzell Archie and Americans for Reform should be dismissed without prejudice

Only Plaintiffs Smith and Kish signed the complaint in this action, as *pro se* litigants, in an attempt to bring this case on behalf of putative plaintiffs Ferzell Archie, Rush Holmes and an entity named "Americans for Reform" (hereinafter AFR) (DE 1 at 6, 25), as well as "other potential plaintiffs" and "those who may

---

[3] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

want to get involved in the suit."  (DE 88 at 28-29.) Similarly, only Smith and Kish

signed Plaintiffs' response to Defendants' motions to dismiss, again purportedly

"on behalf of the plaintiffs," including Ferzell Archie, Rush Holmes and AFR. (DE

69 at 26, 28.)  And, only Smith and Kish appeared at the March 15, 2018 motion

hearing and status conference, although all named plaintiffs were required to

appear in person, and Smith acknowledged in Court that both Archie and Holmes

had notice of the hearing, were informed that they were ordered to appear, and

indicated they were going to appear at the hearing; but they did not.  (DE 88 at 6-

7.)[4]

   At the March 15, 2018 hearing, Smith and Kish independently confirmed

that they are not licensed attorneys and that they are the only Plaintiffs who have

_____

[4] Further, there have been significant issues with service on the putative Plaintiffs
at the address(es) they have provided.  The orders, notices, and certificates of
service sent to putative Plaintiffs AFR, Archie and Holmes, and even Kish, have
been repeatedly "returned as undeliverable." (*See, e.g.,* DEs 9-12, 22, 49, 50, 52,
54, 55, 59-62, 66, 73.)  Smith explained at the status conference that the address
listed on the docket for putative Plaintiffs AFR, Kish, Archie and Holmes was *his*
"office address"—so that all mailing would go *through him*—but that these
Plaintiffs did not reside at that address.  (DE 88 at 10-12.)  Plaintiffs Smith and
Kish were then ordered by the Court to file a notice providing the correct: (1)
addresses; (2) phone numbers; and (3) email addresses for putative Plaintiffs
Ferzell Archie and Rush Holmes.  (DE 83.)  Plaintiff Smith initially filed a
document titled "motion for change of address," seeking to change the address "for
*all* plaintiffs[,]" yet again, to one address—19638 Fenelon Street, Detroit, MI
48234.  (DE 82 (emphasis added).) The Court explained that this "motion" does
not satisfy the Court's order, and Plaintiff Smith subsequently filed a document
listing the requested contact information for himself, Kish, and Archie, and only a
telephone number, but no mailing address, for Holmes.  (DE 83 at 7; DE 87.)

signed the complaint (or any other pleading or document filed in this matter).  (DE 88 at 6, 27-28.)  Smith further explained at the hearing that AFR is not a corporation, partnership, limited partnership, professional corporation, limited liability company, or any other type of entity, and it does not have officers, directors or members, but instead described it as a "collection of individuals," an "activist group," a "discussion forum," "an idea," "a work in progress," and as a "collective idea," and acknowledged that he owned/administered the website for AFR, americansforreform.org.  (*Id.* at 15-19, 22-23.)   As Smith further explained at the hearing:

> Americans for Reform was set up as an idea to bring people together.  There is what I would call a work in progress.  At some point in time, we would look to organize it as an entity to actually have enrolled members and move forward.  At this point in time, it was just an idea to collectively bring people together to stand up for injustices anywhere and everywhere.

(*Id.* at 22-23.)

Parties in federal court "may plead and conduct their own cases personally or by counsel…." 28 U.S.C. § 1654.  The statute "does not permit plaintiffs to appear *pro se* where interests other than their own are at stake."  *Shepard v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002).  Federal Rule of Civil Procedure 11 provides that "[e]very pleading . . . must be signed . . . by a party personally if the party is unrepresented."  Fed. R. Civ. P. 11(a); *see also Arnold v. Heyns*, No. 13-CV-14137, 2014 WL 7184546, at *5 (E.D. Mich. Dec. 16, 2014) (warning the *pro*

14

*se* plaintiffs that filing a pleading without each plaintiffs' personal signature "would be a violation of Rule 11 and could result in sanctions, including monetary sanctions, an unfavorable ruling on the motion or pleading at issue, or even dismissal of their claims."). The reason for such prohibition is to "'protect[] the rights of those before the court' by preventing ill-equipped laypersons from squandering the rights of the party he purports to represent." *Zanecki v. Health All. Plan of Detroit*, 576 F. App'x 594, 595 (6th Cir 2014) (quoting *Myers v. Loudon Cnty. Pub. Sch.*, 418 F.3d 395, 400 (4th Cir. 2005)). Further, "[i]t has been the law for the better part of two centuries … that a corporation may appear in federal courts only through licensed counsel." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993) (citations omitted); *see also United States v. 9.19 Acres of Land, More or Less, in Marquette Cty., Mich.*, 416 F.2d 1244, 1245 (6th Cir. 1969) ("[A] corporation cannot appear otherwise than through an attorney."). This rationale applies not only to corporations, but to all artificial entities. *Rowland*, 506 U.S. at 202 (all artificial entities, such as corporations, partnerships, *or associations*, may only appear in federal court through a licensed attorney); *see also T.C. Bible Inst. v. City of Westland*, No. 04-60224, 2005 WL 2417634, at *3 (E.D. Mich. Sept. 30, 2005) ("It is well settled law that a non-natural person, i.e., an 'artificial entity,' may not appear in the courts of the United States other than through an attorney.").

15

Accordingly, it was improper for Plaintiffs Smith and Kish, without counsel, to bring this action on behalf of Archie, Holmes and AFR, or any other person or entity. As explained above, neither Archie nor Holmes have signed the complaint or any other pleading in this matter and neither individual appeared before the Court, and neither Archie, Holmes nor AFR are represented by counsel. Accordingly, Ferzell Archie, Rush Holmes and Americans for Reform should be dismissed without prejudice as parties to this litigation.

### 2. Plaintiffs have failed to demonstrate that they have standing to pursue their claims

All Defendants argue that Plaintiffs' complaint should be dismissed because they have failed to allege facts demonstrating their standing to bring any of their claims. (DE 43 at 25-27; DE 45 at 20-23.) Defendants state that there is no allegation of any injury to these Plaintiffs, much less an actual or concrete injury. Plaintiffs respond that they have standing because they "have suffered an injury that requires them to purchase a no-fault auto insurance policy from the defendants but the defendants failed to procure them with an alternative method to a fair, equitable, affordable and reasonable no-fault policy." (DE 69 at 5.)

The requirements for standing are derived from Article III of the United States Constitution, which limits the jurisdiction of federal courts to justiciable cases and controversies. *Hollingsworth v. Perry*, 560 U.S. 693, 704 (2013) (citing U.S. Const. art. III, § 2); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37

(1976) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.").  An essential feature of this requirement "is that any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth*, 570 U.S. at 704.  The doctrine of standing ensures that a federal court's exercise of power is not "gratuitous" or "inconsistent" with the limitations imposed by Article III.  *See Simon*, 426 U.S. at 38.  "The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements." *Diamond v. Charles*, 476 U.S. 54, 62 (1986).  Plaintiffs bear the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

A plaintiff must satisfy three requirements to establish Article III standing: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). As this case is at the pleading stage, Plaintiffs "must clearly allege facts demonstrating each element." *Id.*

An injury in fact for purposes of Article III standing is defined as "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548.

The particularization component is necessary to establish an injury in fact and requires that the plaintiff be affected "in a *personal* and *individual* way." *Id.* (emphasis added, collecting cases). The injury must also be concrete, i.e. "de facto," meaning that it actually exists. *Id.*

Plaintiffs broadly assert in their response brief that they "have standing to bring their constitutional claims in Federal District Court" because they "have suffered an injury that requires them to purchase a no-fault auto insurance policy from the defendants but the defendants failed to procure them with an alternative method to a fair, equitable, affordable and reasonable no-fault policy." (DE 69 at 5.)

Here, Plaintiffs' complaint does not clearly allege facts that Plaintiffs Smith and Kish suffered any particularized and concrete injuries as a result of the no-fault insurance policies offered by insurance companies, such that they were affected "in a personal and individual way." *See Spokeo*, 136 S. Ct. at 1548. There is no allegation in the complaint that Plaintiffs Smith and Kish are policy holders of no-fault policies issued by the Defendants, that they were overcharged for any no-fault policies issued by the Defendants, or even that they are drivers in Michigan. Instead, as the Insurance Defendants state, "Plaintiffs merely plead a *philosophical* stance that insurance rates in Michigan," and in particular for Detroit residents, are too high. (DE 45 at 22.) But Plaintiffs Smith and Kish fail to allege facts that they

themselves suffered any concrete injury as a result of the allegedly wrongful conduct in this case.

Plaintiffs' vague and generalized assertions of possible injuries are simply insufficient under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), to meet their burden to demonstrate standing to bring this lawsuit.  Defendants' motions to dismiss should be granted, and Plaintiffs' complaint should be dismissed in its entirety for lack of standing.

### 3. The Insurance Defendants are not "state actors" subject to constitutional claims

The Insurance Defendants also argue that, in addition to lacking standing, Plaintiffs' constitutional claims against them for alleged violations of due process and equal protection fail because the Insurance Defendants are not "state actors." (DE 45 at 23-25.)[5]  Plaintiffs contend in response that the Insurance Defendants are state actors because they are "subjected to heavy state regulation to issue fair, equitable and affordable rates" and that there is "a sufficiently close nexus" between the State and the Insurance Defendants in setting rates that the actions of the Defendants may be treated as that of the State itself.  (DE 69 at 12-15.)

---

[5] The Insurance Defendants and Director McPharlin also discuss a Commerce Clause claim in their motions.  (DE 43 at 31; DE 45 at 9.)  However, Plaintiffs' Complaint (DE 1 at Pg ID 1-7, 28-30) does not contain any allegation regarding the Commerce Clause.  Allegations regarding the Commerce Clause only appeared in Plaintiffs' "civil action brief" attached to their complaint, which has been stricken.  (DE 83 at 7.)

A plaintiff alleging the violation of a right secured by the federal Constitution or laws must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

The Insurance Defendants here are private insurance companies, and Plaintiffs allege no facts that would demonstrate that their conduct in offering no-fault insurance policies in the State of Michigan should be deemed to be state action. Plaintiffs contend that the State's regulation of the no-fault insurance providers renders them state actors, relying on *Shavers I , supra*, and *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349-51 (1974). The constitutionality of the Michigan No-Fault Act was originally challenged in *Shavers I,* where the Court found that the mechanism for determining rates was constitutionally deficient, but could be cured through legislation or administrative rules defining when a rate is "excessive, inadequate or unfairly discriminatory." *Shavers I*, 402 Mich. at 602-03. The Michigan Legislature subsequently adopted the Essential Insurance Act,

which, in turn, cured this deficiency and created the current regulatory scheme

governing ratemaking for auto and home insurance.  MCL §§ 500.2101-.2138.

The Michigan Supreme Court then approved this legislative response in *Shavers v.*

*Attorney General of Michigan*, 412 Mich. 1105 (1982) (*Shavers II*), noting that

there were no further constitutional challenges pending.

Although the Michigan Supreme Court in *Shavers I* found the insurance

companies in that case to be state actors under the Michigan and United States

Constitutions because "insurance companies are the instruments through which the

Legislature carries out a scheme of general welfare," *Shavers I*, 402 Mich. at 597,

the United States Supreme Court has afterward "consistently held that '[t]he mere

fact that a business is subject to state regulation does not by itself convert its action

into that of the State for purposes of the Fourteenth Amendment.'"  *American*

*Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (quoting *Jackson*, 419 U.S.

at 350 ); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, (1982) (holding private

school's personnel decisions not attributable to the state, despite "extensive

regulation of the school generally"); *Blum v. Yaretsky*, 457 U.S. 991 (1982)

(refusing to hold New York State responsible for nursing home's patient transfer

decision, "although it is apparent that nursing homes in New York are extensively

regulated"); *Adams v. Vandemark*, 855 F.2d 312 (6th Cir. 1988) (holding private

not-for-profit corporation was not a state actor, even though subject to state and

federal regulation).  Further, in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 358 (1974), upon which Plaintiffs expressly rely, the Supreme Court refused to find state action in the electric company's decision to terminate service, notwithstanding that it was "a heavily regulated utility with at least something of a governmentally protected monopoly," because that "is not sufficient to connect the State … with respondent's action so as to make the latter's conduct attributable to the State for purposes of the Fourteenth Amendment."  The Sixth Circuit has explained that "it is now well-established that state regulation, even when extensive, is not sufficient to justify a finding of a close nexus between the state and the regulated entity."  *Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000) (citations omitted).

Thus, the Insurance Defendants "will not be held to constitutional standards unless 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'"  *Sullivan*, 526 U.S. at 52 (quoting *Jackson*, 419 U.S. at 350).  "Whether such a 'close nexus' exists … depends on whether the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'"  *Id.* (citations omitted).  Plaintiffs here have failed to make this showing.  While the Insurance Defendants are regulated by the State, such regulation alone is not

enough to turn them into state actors, and Plaintiffs have failed to plead or otherwise show that the Insurance Defendants' provision of no-fault insurance and setting of rates has been significantly encouraged or coerced by the State or that the Insurance Defendants' actions are ones traditionally reserved to the State such that their actions should be attributed to the State. As the Supreme Court explained in *Sullivan*, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Id.* (citations omitted).[6] The Insurance Defendants also cite to settled case law consistently holding that private insurers are not state actors, even though subject to state regulation. (DE 45 at 25-25, citing *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-11500, 2013 WL 509284, at *20- 21 (E.D. Mich. Feb. 12, 2013) (dismissing federal civil rights claims, holding State Farm was not state actor because it adjudicated some claims assigned to it through Michigan's No Fault statutory mechanism); *Guinn v. Farmers Ins. Co.*, 563 F. App'x 653, 654–55 (10th Cir. 2014) (dismissing constitutional claims against Farmers Insurance, holding it was not state actor

---

[6] Further, Plaintiffs offer no factual support for the contention raised in their response brief (but not in their complaint) that the Insurance Defendants' payment into the Michigan Catastrophic Claims Association (MCCA) constitutes state action. The MCCA is a nonprofit association of private insurers that, by statute, is required to assess premiums on its member insurers to fund its reimbursement obligations and operating expenses for claims which exceed a designated amount. MCL § 500.3104(7)(d). The Michigan Supreme Court has recognized that the MCCA is not a state agency, *see League Gen. Ins. Co. v. Michigan Catastrophic Claims Ass'n*, 458 N.W.2d 632, 638 (Mich. 1990), and Plaintiffs have failed to show how Defendants' payment into this fund renders them state actors.

simply because it provided auto insurance in a state requiring drivers to carry such insurance); *Williams v. Progressive Ins. Co.*, No. 4:16-CV-01214 JAR, 2017 WL 1155894, at *2 (E.D. Mo. Mar. 28, 2017) (dismissing constitutional claims because "it is well established that private insurers are not state actors for purposes of a Section 1983 claim."); *Anderson v. State Farm Fire & Cas.*, 2010 WL 1009740, at *3 (S.D. Ala. Feb. 19, 2010) (dismissing § 1983 claims because, "[i]n general, private insurers . . . are not state actors and are not subject to suit under § 1983.").) *See also Jackson v. IDS Prop. & Cas. Ins. Co.*, No. 1:14-cv-524, 2014 WL 2711973 (W.D. Mich. June 16, 2014) ("Plaintiff's complaint contains no allegation of facts that would remotely suggest that the defendant insurance company acted under color of state law when it denied her no-fault benefits."); *Hayes v. Allstate Ins. Co.*, 95 F.Supp.2d 832, 836 (W.D. Tenn. 2000) ("It is clear that Allstate is not acting under color of state law, and that it cannot be considered a government actor merely because it does business in a heavily regulated industry.").

Because Plaintiffs' complaint fails to allege any facts which would justify treating the Insurance Defendants as state actors, all constitutional claims alleged against these defendants should be dismissed with prejudice.

**4.    Plaintiffs' constitutional claims against Director McPharlin are barred by sovereign immunity and/or qualified immunity**

**a.    Eleventh Amendment immunity**

24

Director McPharlin argues that Plaintiffs' claims against him in his official capacity are barred by the Eleventh Amendment.  Plaintiffs do not address this argument in their response.

The Eleventh Amendment bars suits in federal court against state officers acting in their official capacity.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  This is because a suit against a state employee in his official capacity is tantamount to a suit against the state itself and must be dismissed based on Eleventh Amendment immunity. *See U.S. ex rel. Diop v. Wayne Cty. Cmty. Coll. Dist.*, 242 F. Supp.2d 497, 515 (E.D. Mich. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

Initially, as Director McPharlin accurately states in his motion, he is not named anywhere in the Complaint except the caption, and there are no specific allegations levied against him.  Accordingly Plaintiffs' complaint against Director McPharlin should be dismissed on this basis because "[w]here a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints."  *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (citation omitted); *Webb v. Caruso*, No. 1:06-cv-3, 2006 WL 416261, at *4 (W.D. Mich. Feb. 22, 2006) (same).

25

To the extent Director McPharlin is arguably included as one of "the defendants," as stated in the complaint, and Plaintiffs seek to assert a claim against him solely because he is the Director of the DIFS, presumably in his role regulating the rates set by insurance companies, such claims would necessarily involve Director McPharlin acting within the scope of his duties and would be shielded by sovereign immunity. *See Will*, 491 U.S. at 71. Accordingly, Plaintiffs' claims against Director McPharlin – all of which would appear to be alleged against him in his official capacity (if any) – should be dismissed with prejudice.

### b.     Qualified immunity

Director McPharlin also argues that to the extent Plaintiffs' claims are asserted against him in his personal capacity, they are barred by qualified immunity. (DE 43 at 21-24.) Plaintiffs respond that the Director knowingly allowed non-party L.A. Insurance to have a monopoly on 7-day insurance policies, which "clearly violates the no-fault act statutory requirements," and thus he is not entitled to qualified immunity. (DE 69 at 17-18.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation and quotation omitted). The Court conducts a two-step analysis in assessing

26

qualified immunity.  First, the Court determines whether "the violation of a constitutional right has occurred" and second, whether the "constitutional right at issue was clearly established at the time of defendant's alleged misconduct." *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009).  While the better approach in resolving cases in which qualified immunity is raised is to "determine first whether the plaintiff has alleged a deprivation of a constitutional right at all," before moving onto step two, this order of analysis is not mandatory.  *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998); *Pearson*, 555 U.S. at 236 (holding that courts analyzing claims of qualified immunity are not required to first determine whether the facts shown by plaintiff demonstrate a constitutional violation before determining whether the right was clearly established).  A constitutional violation is clearly established where there is "on-point, controlling authority or a 'robust consensus of cases of persuasive authority.'"  *Ortega v. U.S. Immigration & Customs Enforcement*, 737 F.3d 435, 439 (6th Cir. 2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011)).

Plaintiffs' complaint is devoid of any allegations that Director McPharlin violated their constitutional rights, and it should be dismissed on that basis.  At best, the Complaint generally alleges "violation of federal rights of a protected class of citizens," who are seemingly no-fault insurance policy holders, but Plaintiffs fail to allege to which protected class they belong or provide any facts

27

supporting their assertion that "the punishment for not having no-fault insurance violates due process of law." (*See* DE 1 at 6.) Further, Plaintiffs have failed to meet their burden to show that Director McPharlin violated a "clearly established right" when enforcing the No-Fault Insurance Act. As he states in his motion, he is following the Insurance Code, as required, and Plaintiffs have failed to show otherwise. Soon after the passage of the No-Fault Act, the Michigan Supreme Court issued an order determining that no-fault insurance is constitutional, *see Shavers II*, 412 Mich. at 1105 , and it has subsequently held that it is not unfairly discriminatory for insurers to base insurance rates on credit scores, age, income, territory, and other factors, provided the rating plan "'reflects reasonably anticipated reductions in losses and expenses' and is uniformly applied to all of the insurer's insureds." *Insurance Inst. of Mich. v. Comm'r, Fin. & Ins. Servs., Dep't of Labor & Econ. Growth*, 486 Mich. 370, 400-01 (2010).

Plaintiffs' unsupported assertion, raised for the first time in their response brief, that Director McPharlin somehow allows non-party L.A. Insurance to have a monopoly on a 7-day insurance policy, fails to defeat Director McPharlin's qualified immunity defense. Plaintiffs have not alleged that any other insurer has sought but been denied the ability to offer similar 7-day policies, or that L.A Insurance Company's 7-day policy is the only available alternative to no-fault

insurance policy obtained through "ordinary methods," and fails to demonstrate how this violates a clearly established right.

Accordingly, Director McPharlin is protected by qualified immunity and Plaintiffs' claims against him in his personal capacity, if any, should be dismissed with prejudice.

### 5. Plaintiffs' antitrust claims should be dismissed

First, although not argued by the parties, the Court notes that the complaint fails to identify the "antitrust laws" Plaintiffs allege to have been violated, and thus fails to comply with Fed. R. Civ. P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Defendants nevertheless make a reasonable assumption and address this claim as an alleged violation of the Sherman Act, and in Plaintiffs' response brief, they also broadly refer to Section 1 of the Sherman Act. To the extent Plaintiffs assert a claim under that section, it fails for the reasons set forth below.

### a. Plaintiffs' antitrust claims against Director McPharlin are barred by *Parker v. Brown*

Director McPharlin argues that Plaintiffs' vague allegations that he engaged in price fixing, price discrimination and monopolization in violation of the "Antitrust Act," in his role as Director of the Department of Insurance and Financial Services, should be dismissed because such claims against the State are barred by *Parker v. Brown*, 317 U.S. 341 (1943.) Plaintiffs fail to specifically

respond to these arguments, but instead contend that the State, through Director McPharlin, somehow allows L.A. Insurance to have a monopoly on 7-day insurance policies. (DE 69 at 18-20.)

The Sherman Act Section 1 makes illegal "[e]very contract, combination … or conspiracy in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Section 2 makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. However, as the Supreme Court recognized in *Parker v. Brown*, 317 U.S. 341, 351 (1943), "[t]he Sherman Act makes no mention of the state as such, and gives no hint that it was intended to restrain state action or official action directed by the state. The Act is applicable to 'persons' including corporations[.]" The "state action" doctrine described in *Parker* was explained further in *Hoover v. Ronwin*, 466 U.S. 558, 567-69 (1984), where the Court explained that "[t]hus, under the Court's rationale in *Parker*, when a state legislature adopts legislation, its actions constitute those of the State, … and *ipso facto* are exempt from the operation of the antitrust laws."

Because Director McPharlin is directed by the Michigan Legislature, through the Insurance Code, to regulate the business of insurance in Michigan, he is exempt from liability under the Sherman Act pursuant to *Parker*. *See Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002)

(explaining that the Supreme Court held in *Parker* that states as sovereigns are exempt from antitrust liability under the Sherman Act).  As cited by the Director, the Michigan Legislature has determined that "an insurer may use factors … for insurance if the plan … reflects reasonably anticipated reductions or increases in losses or expenses."  MCL 500.2110a; *see also* MCL 500.2403(1)(c); MCL 500.2603(1)(c) ("[R]ating plans may measure any differences among risks that may have a probable effect upon losses or expenses….."); *Insurance Inst. of Michigan*, 486 Mich. at 400 (holding the Insurance Code allows insurers to consider credit scores when determining premium discounts).  Accordingly, Plaintiffs' antitrust claims against Director McPharlin should be dismissed.

### b.    Plaintiffs' claims against the Insurance Defendants are pre-empted by the McCarran-Ferguson Act

The Insurance Defendants argue that the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, expressly bars a federal action against them under the antitrust statutes where the activity at issue is part of the "business of insurance" and does not constitute an act of boycott, coercion or intimidation.  (DE 45 at 25-29, citing 15 U.S.C. § 1012(b)).  Defendants contend that because auto insurance is extensively regulated by the State of Michigan, and because setting auto insurance rates clearly constitutes the "business of insurance," the McCarran-Ferguson Act bars Plaintiffs' federal antitrust claims.  Plaintiffs respond that their antitrust claim is not a claim for Congress to regulate the business of insurance, but instead it

31

suggests that the Insurance Defendants are attempting to monopolize 7-day no-fault insurance policies and restraining competition.  (DE 69 at 18-20.)

In *Group Life & Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205 (1979), the Supreme Court noted that in enacting the McCarran-Ferguson Act, "the primary concern of both representatives of the insurance industry and the Congress was that cooperative ratemaking efforts be exempt from the antitrust laws."  *Id.* at 221.  The Supreme Court has developed a three-part test for determining whether particular conduct constitutes the "business of insurance" within the meaning of McCarran-Ferguson:

1.  whether the practice has the effect of transferring or spreading a policyholder's risk;

2.  whether the practice is an integral part of the policy relationship between the insurer and the insured; and

3.  whether the practice is limited to entities within the insurance industry.

*Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982) (citing *Group Life & Health Ins. v. Royal Drug Co.*, 440 U.S. 205 (1979)).  Plaintiffs' contention in their complaint – that the use of "non-driving factors" to determine auto insurance rates and premiums violates federal law and causes excessive rates – thus easily satisfies these criteria.  *See S.E.C. v. Nat'l Sec., Inc.*, 393 U.S. 453, 460 (1969) ("Certainly the fixing of rates is part of [the business of insurance].").  As the Sixth Circuit has concluded, rate-making is a key part of insurance regulation and

cooperative rate-making is therefore exempt from antitrust laws.  *See Katz v. Fid. Nat'l Title Ins. Co.*, 685 F.3d 588, 593-94 (6th Cir. 2002) ("Because title-insurance rate-setting spreads some risk, and is a foundational piece of the policy relationship between the insurer and the insured, and has no application outside the context of insurance, it is clearly part of the business of insurance, within the meaning of *Pireno*.").  Other federal courts have similarly concluded that rate-setting for insurance constitutes the "business of insurance" for purposes of the McCarran-Ferguson Act.  *See, e.g., Slagle v. ITT Hartford*, 102 F.3d 494, 498 (11th Cir. 1996) ("conclud[ing] that appellees' alleged rate-fixing conduct is the 'business of insurance'"); *Royal Drug Co.*, 440 U.S. at 224, n.32  ("It is clear from the legislative history [of the McCarran-Ferguson Act] that the fixing of rates is the 'business of insurance.'"); *Ocean State Physicians Health Plan v. Blue Cross & Blue Shield*, 883 F.2d 1101, 1108 (1st Cir. 1990) (the marketing and pricing of insurance policies is the business of insurance).

Plaintiffs' allegation, raised for the first time in their response brief, that the State is attempting to monopolize the 7-day no-fault insurance policies and restraining competition by only granting  non-party L.A. Insurance Company a license to issue a 7-day insurance policy, does not involve the Insurance Defendants and thus fails to assert a claim against them.  But, in any event, such a claim would also be barred by the McCarran-Ferguson Act.  *See SEC v. Nat'l Sec.,*

*Inc.*, 393 U.S. 453, 460 (1969) (noting "[t]he selling and advertising of policies" are part of the "business of insurance" under the McCarran-Ferguson Act); *Ocean State Physicians*, 883 F.2d at 1108 ("The exemption offered to state-regulated insurance activities by the McCarran-Ferguson Act would be thin indeed if it were deemed to cover the content of policies, but not the marketing and pricing activities which necessarily accompany these policies.").

"In short, the McCarran-Ferguson act, which restores to the states the exclusive power to regulate the insurance industry except where Congress specifically acts to supplant that authority, bars the Plaintiffs from challenging the alleged conduct as a violation of the federal antitrust laws." *Bristol Hotel Mgmt. Corp. v. Aetna Cas. & Sur. Co.*, 20 F.Supp.2d 1345, 1349 (S.D. Fla. 1998). Accordingly, Plaintiffs' antitrust claims against the Insurance Defendants should be dismissed.

### c.   Plaintiffs' complaint fails to state a claim for violation of the Sherman Act

The Insurance Defendants also argue that Plaintiffs' complaint fails to state the basic elements of an antitrust violation, because they have not alleged an injury, and have not pleaded facts sufficient to show an agreement between the Insurance Defendants or any kind of monopoly.  (DE 45 at 29-32.)  Plaintiffs suggest that "discovery will reveal evidence of an agreement with the director and the defendants to place restraints on commerce by monopolizing a 7-day price-

34

fixing no-fault insurance scheme marketed to motorist [sic] without any competition in the market place who are unable to secure no-fault insurance through ordinary methods." (DE 69 at 18.)

In order to state a cause of action under Section 1 of the Sherman Act, "the plaintiff must establish that the defendants contracted, combined or conspired among each other, that the combination or conspiracy produced adverse, anticompetitive effects within relevant product and geographic markets, that the objects of and conduct pursuant to that contract or conspiracy were illegal and that the plaintiff was injured as a proximate result…." *Crane & Shovel Sales Corp. v. Bucyrus-Eire Co.*, 854 F.2d 802, 805 (6th Cir. 1988); *see also White and White, Inc. v. American Hosp. Supply Corp.*, 723 F.2d 495, 504 (6th Cir. 1983) (explaining that the essential elements of a violation of Section 1 of the Sherman Act are: (1) a contract, combination or conspiracy; (2) affecting interstate commerce; (3) which imposes an "unreasonable" restraint of trade). Section 2 of the Sherman Act has two elements: "(1) possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966); *Re/Max Intern. Inc. v. Realty One, Inc.*, 173 F.3d 995, 1016 (6th Cir. 1999). Monopoly power is "'the power to control prices or exclude

competition,'" which may ordinarily "be inferred from the predominant share of the market." *Grinnell*, 384 U.S. at 571 (noting that cases in which the Court previously found monopoly power involved defendants possessing over two-thirds, 80%, or 90% of the relevant market).

Plaintiffs' complaint lacks any allegations of a contract, combination or conspiracy, or any other agreement among and between the Defendants within the meaning of <u>Section 1</u> of the Sherman Act, which resulted in an unreasonable restraint on trade. Plaintiffs only broadly and conclusorily claim that "[t]he defendants['] actions to fix no-fault auto insurance rates using price fixing restraints, price discrimination and monopolization violates [the] antitrust act." (DE 1 at 5.) However, Plaintiffs assert no allegations identifying which of the Defendants allegedly conspired, how they did so, or any other facts in support of an agreement violative of the Sherman Act. The Supreme Court has made it clear that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *See Twombly*, 550 U.S. at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). There can be no liability under Section 1 of the Sherman Act in the absence of a conspiracy, agreement, or other concerted action by separate entities to restrain trade. *See Total Benefits Planning Agency*

36

*Inc. v. Anthem Blue Cross & Blue Shield*, 630 F.Supp.2d 842, 851 (S.D. Ohio 2007) (finding plaintiffs' allegations that "the Anthem Defendants and the other Defendants had agreement and common understanding regarding price to be charged" insufficient to survive a motion to dismiss). In addition, the allegations asserted for the first time in Plaintiffs' response brief, regarding non-party L.A. Insurance and 7-day insurance policies, fails to state a claim for Sherman Act violations by the Insurance Defendants.

Further absent from the complaint are facts or allegations sufficient to support a claim under Section 2 of the Sherman Act, to the extent Plaintiffs seek to assert one. Other than the conclusory use of the term "monopolization," Plaintiffs have not alleged any facts showing a predominant market share by any of the defendants, fail to define the relevant market adequately, and thus have failed to state a claim under Section 2 of the Sherman Act. *See Grinnell*, 384 U.S. at 571.

Both the United States Supreme Court and the Sixth Circuit have stressed the importance of insisting on specificity in antitrust pleadings to avoid exposing defendants to potentially massive factual discovery costs. *See Twombly*, 550 U.S. at 558 ("[I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive"); *Foundation for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 530 (6th Cir. 2001) ("While the

pleading standard under the federal rules is very liberal … 'the price of entry [into

the federal courts on a private antitrust claim], even to discovery, is for the plaintiff

to allege a factual predicate concrete enough to warrant further proceedings, which

may be costly and burdensome.'") (quoting *DM Research, Inc. v. Coll. of Am.*

*Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)).  Plaintiffs' allegations in their

complaint are wholly insufficient to plead a claim for a Sherman Act violation and

that claim should be dismissed.[7]

### 6. Defendant Progressive Casualty should be dismissed

Defendant Progressive Casualty filed a separate motion to dismiss in which

it asserts that Plaintiffs' claims against it fail for a separate reason:  it has not

written personal automobile insurance policies in Michigan in at least fifteen years

and thus cannot be liable for the allegations in Plaintiffs' complaint.  (DE 46.)

Plaintiffs wholly failed to respond to this motion in their response brief.

The Court takes judicial notice of Michigan's DIFS publication of

"Companies that are Licensed and Filed to Insure Personal Automobiles and/or

Miscellaneous Vehicles in Michigan 4-17-18,"

---

[7] The Insurance Defendants also present compelling arguments that Plaintiffs'
antitrust claims are barred by the filed-rate doctrine and should be dismissed for
failure to exhaust available administrative remedies.  (DE 45 at 25-29, 32-36.)
However, because I conclude that Plaintiffs have failed to demonstrate they have
standing to pursue their claims, their antitrust claims are barred by the McCarran-
Ferguson Act, and that their complaint fails to state an antitrust claim, the Court
need not address these additional arguments.

http://www.michigan.gov/documents/cis_ofis_apa_list_25522_7.pdf, and notes

that Progressive Casualty is not identified as a company licensed to write personal

automobile insurance in Michigan.  *See* Fed. R. Evid. 201(b)(2) (court may take

judicial notice of facts that "can be accurately and readily determined from sources

whose accuracy cannot reasonably be questioned"); *New England Health Care*

*Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir.

2003) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in

addition to the complaint if such materials are public records or are otherwise

appropriate for the taking of judicial notice."); *Hebshi v. United States*, 12

F.Supp.3d 1036, 1043 (E.D. Mich. 2014) ("In ruling on a motion to dismiss, the

Court may consider the complaint as well as (1) documents that are referenced in

the plaintiff's complaint or that are central to plaintiff's claims, (2) matters of

which a court may take judicial notice, and (3) documents that are a matter of

public record."); *Overall v. Ascension*, 23 F.Supp.3d 816, 824-25 (E.D. Mich.

2014) ("The Court may take judicial notice of public documents and government

documents because their sources 'cannot reasonably be questioned.'").  Because

Plaintiffs' complaint challenges Michigan no-fault automobile insurance policies,

and Defendant Progressive Casualty's unopposed motion states that Progressive

Casualty has not been involved in writing personal automobile insurance policies

in Michigan for at least fifteen years, Plaintiffs' claims against Progressive

Casualty fail, and their claims against Progressive Casualty should be dismissed for this reason as well.

### F. Conclusion

For the reasons set forth above, the Court should grant Defendants' respective motions to dismiss (DEs 43, 45, 46) and **DISMISS** putative Plaintiffs Ferzell Archie, Rush Holmes and Americans for Reform **without prejudice**, and **DISMISS** Plaintiffs Ray Smith's and Barret Kish's claims in this matter **with prejudice**.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

40

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: May 11, 2018                    s/Anthony P. Patti_____
                                       Anthony P. Patti
                                       UNITED STATES MAGISTRATE JUDGE



**Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on May 11, 2018, electronically and/or by U.S. Mail.

                                       s/Michael Williams_____
                                       Case Manager for the
                                       Honorable Anthony P. Patti